CITY OF JACKSON *v.* MITCHELL.*

(Division B. June 9, 1924.)

[100 So. 513. No. 23981.]

HEALTH. *Affidavit held insufficient to charge statutory offense of failure or refusal to submit to examination for venereal disease.*

An affidavit alleging that "Dr. Hardy Hays then and there being an officer of the board of health, in the proper performance of his duties as such officer, did then and there have information on which he suspected the defendant Pearl Mitchell of being afflicted with a contagious venereal disease, did then and there summon said defendant Pearl Mitchell to appear before him as such officer of the board of health to be by him examined, and the said Pearl Mitchell did then and there willfully and unlawfully fail and refuse to appear for such examination," is not sufficient to charge a violation of chapter 194, Laws of 1918 (Hemingway's Supplement 1921, sections 4884a to 4884f).

*Headnote 1. Health, 29 C. J., section 76.

APPEAL from circuit court of Hinds county.
HON. W. H. POTTER, Judge.

Pearl Mitchell was convicted in the city court of an offense, and on appeal to the circuit court a demurrer was sustained to the affidavit, and the city appeals. Affirmed.

*Green, Green & Potter,* for appellant.

This case comes here on appeal from the circuit court of the First District of Hinds county, wherein a demurrer was sustained to the affidavit charging the defendant with a violation of chapter 194 of the Laws of 1918.

The chief attack on the act was that it was violative of section 23 of the state Constitution, which guarantees the people protection in their person and property against unreasonable search or seizure. The only case touching this question from our own court is that of *Hawkins* v. *Hoye,* 66 So. 741. A similar inspection act has been sustained by the supreme court of Iowa in the case of *Hubbell* v. *Higgins,* 148 Ia. 36, 126 N. W. 914. A very interesting case on this question is that of *Ex Parte McGee,*

from the supreme court of California, 185 Pac. 14, also 8 A. L. R. 831 and note.

The supreme court of Washington has laid down, with the utmost implicitness, the rules governing the rights of the legislature to pass such measures in *State of Washington, ex rel. McBride* v. *Superior Court of Kings County,* 174 Pac. 973.

In *Application of Travers,* 192 Pac. 454, the Supreme court of California again upheld a case allowing inspection, quarantine and disinfection of persons suffering with infectious diseases, and appointed the health officer of each municipality the inspector and directed him ''to use every available means to ascertain the existence of, and immediately to investigate, all reported or suspected cases of syphillis. See, also, *Ex Parte Dillon,* 186 Pac. 150; *Ex Parte Johnson,* 180 Pac. 844, 29 C. J. 243; *Dowling* v. *Harden,* 88 So. (Ala.) 217; *Rock* v. *Carney,* 185 N. W. (Mich.) 798. For a history of quarantine see 91 North American Review, 442.

In the case at bar, Dr. Hays having determined that the defendant was operating an assignation house, and from other causes, had reasonable grounds to suspect that she was afflicted with venereal disease.

In all cases it is to be presumed that the officers of the law will do their duty in the premises and be actuated only by the highest motives in their zeal to preserve and protect the public health. There can be no doubt that the act in question is reasonably calculated to so preserve and protect the public health.

We, therefore, most earnestly and deferentially insist that the statute in question does not violate section 23; that the search of the defendant's person is a reasonable one, and that the judgment of the lower court should be reversed and the cause remanded.

*C. O. Jaap, Jr.,* for appellee.

I. The very illuminating brief of appellant addresses itself to the careful consideration of a legislative body rather than to the judicial determination of a court.

In the case at bar, Pearl Mitchell, a citizen of this state, without being convicted or charged with crime, was ordered by Dr. Hays to present herself for an examination, to go to his office, disrobe and present herself to his inspection. This without an affidavit and merely because the doctor "suspected" that she might have an infectious disease.

Appellee submits that if the board of health desires to make such examinations of persons suspected by its agents, it is the duty of that agent to appear before a magistrate and upon oath state that he suspects and has cause to suspect the person of suffering with this disease. Having obtained this warrant, it is possible that he would have the power to make this very delicate inspection.

We submit, that if the fundamental law of the land is so jealous of the rights of the citizens that it will not allow the search of his pig pen by a sheriff for corn whiskey mash, without a warrant, it certainly protects the good women of this state in their privacy.

II. We contend seriously that this act is obnoxious to the constitution of this state because section 1 makes it a misdemeanor for a person afflicted with a veneral disease to indulge in the sexual relation and section 3 attempts to compel an examination of the person accused, thus forcing him or her against their will to give mute but unmistakable and possibly damning evidence against themselves. This is in derogation of the common law as well as violative of the constitution. 12 C. J., p. 786, sec. 219.

The view maintained by controlling authorities is that reasonableness is a test to be applied to health regulations. Bailey on Habeas Corpus, par. 106; *Copcott* v. *Board of Health,* 135 N. E. 820. A case to which we invite very close attention is *The Matter of Smith,* 140 N. E. 479.

In this cause we must distinguish between the right of health authorities to isolate persons who are admittedly

suffering with a communicable disease and their alleged right indiscriminately to examine persons to discover the existence of a disease which in its nature brands one as a person of moral turpitude. Our view of this case is directly supported by *Wragg* v. *Griffin, Sheriff* (Ia.),—2 A. L. R. 1327; *State* v. *Height,* 117 Iowa, 650, 59 L. R. A. 437; *State* v. *Holcomb,* — Mo. 54.

Ethridge, J., delivered the opinion of the court.

By chapter 194, Laws of 1918 (sections 4884a to 4884f, Hemingway's Supplement 1921), the legislature provided for the punishment of any person afflicted with syphilis or any other venereal disease who, knowing of such condition, shall have sexual intercourse with any other person, and by section 2 of said act gave the state board of health full power to isolate, quarantine, or otherwise confine, intern, and treat such person afflicted with such infectious venereal disease for such time and under such restrictions as may seem proper, and to pass all such rules and regulations as to the isolation, quarantine, confinement, internment, and treatment as may be needful. Section 3 of said act provides that any person suspected of being afflicted with any such infectious venereal disease shall be subject to physical examination and inspection by any representative of the state board of health, and, for failure or refusal to allow such inspection or examination, such person may be punished as for a misdemeanor. Section 4 of said act provides that any person knowingly violating any rule or regulation promulgated by the state board of health, under the authority of this act, shall be deemed guilty of a misdemeanor and upon conviction shall be punished by fine or imprisonment or both.

An affidavit was made against the appellant, Pearl Mitchell, before the city clerk of the city of Jackson, which as finally amended provided after the formal parts:

"Dr. Hardy Hays then and there being an officer of the board of health, in the proper performance of his

duties as such officer, 'did then and there have information on which he suspected the defendant Pearl Mitchell of being afflicted with a contagious venereal disease, did then and there summon said defendant Pearl Mitchell to appear before him as such officer of the board of health to be by him examined, and the said Pearl Mitchell did then and there willfully and unlawfully fail and refuse to appear for such examination.''

The defendant was convicted in the city court and took an appeal to the circuit court, where a demurrer was filed to the affidavit on the grounds:

(1) That ''the affidavit charges no violation of the laws of the state of Mississippi, or ordinance of the city of Jackson, Mississippi;'' (2) ''that the only statute which would permit of a prosecution against her for failure to submit to an examination for veneral disease is House Bill No. 568, of the Acts of the Mississippi legislature of 1918, which said statute is void because violative of the Constitution of the state of Mississippi;'' and.(3) that section 3 of the above act referred to violates sections 14, 23, and 26 of the state Constitution, and that the act ''is void in that it is too broad and uncertain in its terms and that it is too general and too sweeping and provides for the deprivation of innocent citizens of their liberty without process of law and without their being given opportunity to defend themselves.''

The demurrer was sustained and appeal prosecuted by the city of Jackson.

The constitutionality of the act is elaborately argued in the brief, but we think the action of the court below must be upheld because if the section be valid the affidavit is insufficient to charge a violation of the statute. It will be noted from a reading of the affidavit that it sets forth no rule or regulation of the state board of health requiring the appearance of the suspected person before the health officer at his office, if indeed the board had such power to pass such regulation under the act, and as the statute does not require any person suspected of being so afflicted to appear at the office of the state board

of health or at any agent's office for such examination, the statute is not necessarily violated by the refusal of the person to respond to such notice. The utmost that is required by section 3 of the statute of the person suspected under the terms of the act is to allow an inspection or physical examination by the member of the state board of health or its lawful agent. No enlargement of the statute can be placed upon it by construction for the reason that the statute is to be strictly construed, and nothing can be taken by intendment or presumption against the defendant. The health officer cannot require, under the terms of the statute, such person to appear before him. He must go to the person and make demand upon the person at his place of business or residence. The affidavit does not allege that the affiant, Dr. Hays, went to the defendant and disclosed the ground of his opinion or suspicion and then and there demanded the right under the statute to make such examination or inspection. Again the affidavit does not disclose that Dr. Hays in fact had any information that would authorize him to suspect the defendant to be so infected, nor does it disclose, if it had such information, its source, character, or reliability. Certainly the statute cannot be construed to mean that mere suspicion founded on gossip or rumor would be sufficient. It is extremely doubtful as to whether the statute could be upheld if the information was not disclosed under oath by some credible person. A statute, to say the least of it, goes to the very limit of constitutional power in invading the liberty and privacy of the citizen. The statute provides, however, no means of hearing to the suspected person prior to submitting to the examination requested, and he is given no opportunity under the language of the statute to be heard. If the statute is valid, such hearing must be provided for. It is doubtful whether the provisions of section 2 of the statute are sufficiently specific to authorize the state board of health to provide such rules, but to uphold the statute such rules must be provided somewhere and the suspected person must be informed and given

an opportunity to be heard on the question before being required to submit to such a test.

It is familiar learning that the court will not pass upon the constitutionality of the statute unless it is necessary to do so in order to dispose of the case, and we think that the affidavit is insufficient to subject the citizen to the prosecution because it does not disclose a violation of the statute as written. The power of the state to protect the public health is very great, but all legislation looking to that end, in view of our constitutional provisions above set out, should be carefully framed so as to safeguard as far as possible the rights of the citizens and to prevent an invasion of the Bill of Rights in the Constitution. It is somewhat remarkable that, in dealing with so important a subject, and one which goes to the very limit of constitutional power, the legislature did not itself provide the procedure and safeguards necessary to secure the objects of the legislation. Of course in such questions as searching the persons or houses and the effects and possessions of the people, the probable cause is for judicial determination, and as the act here in question confers upon the board of health rule-making power equivalent in its effect to legislation it is doubtful whether the board of health can be both prosecutor and trier of the case.

The case of *Wragg* v. *Griffin, Sheriff,* 185 Iowa, 243, 170 N. W. 400, 2 A. L. R. 1327, and case note at page 1332, is an instructive case upon this question and the powers of the state with reference to health regulations were discussed in such way as to show the seriousness of the question sought to be raised here.

We trust that the board of health and the members of the legislature, and the law-enforcing authorities, will study these cases to the end that the statutes may, if possible, serve the great public policy to be promoted thereby without needlessly and arbitrarily interfering with the privacy of the citizen.

The judgment of the court below is affirmed.

*Affirmed.*